UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFIA CAMPOS-RIEDEL,<br><br>  Plaintiff,<br><br>  v.<br><br>JP MORGAN CHASE, et al.,<br><br>  Defendants. | No. 2:12-cv-2819 TLN DAD PS<br><br><br><br>ORDER |

This matter came before the court on June 14, 2013, for hearing of defendants' motions to dismiss. Plaintiff Sofia Campos-Riedel appeared on her own behalf. Attorney Gregory Belnap appeared telephonically on behalf of the defendants. For the reasons stated below, defendants' motions will be granted.

BACKGROUND

Plaintiff commenced this action on October 16, 2012, by filing a complaint in the Placer County Superior Court. (Doc. No. 1 at 5.) Defendants removed the matter to this court on November 11, 2012, pursuant to 12 U.S.C. § 1452(f).[1] On December 3, 2012, defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), and JP Morgan Chase, ("Chase"), filed a

---

[1] Title 12 U.S.C. § 1452(f) provides that "all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value".

1

1   motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

2   Procedure.[2]  (Doc. No. 6.)  On February 22, 2013, the parties appeared before the undersigned

3   and plaintiff requested leave to file an amended complaint.  On February 25, 2013, the

4   undersigned issued an order granting plaintiff leave to file an amend complaint and denying

5   defendants' motion to dismiss without prejudice as having been rendered moot.  (Doc. No. 19.)

6          Plaintiff filed her amended complaint on March 12, 2013.  (Doc. No. 20.)  Therein,

7   plaintiff alleges, in relevant part, as follows.  On December 14, 1993, Donald Riedel purchased

8   the property at issue in this action ("subject property") through a mortgage company with a loan

9   provided by defendant Freddie Mac.  (Am. Compl. (Doc. No. 20) at 4.[3])  Plaintiff married Donald

10  Riedel on September 17, 1994.  (Id.)  On August 25, 1996, Donald Riedel deeded the subject

11  property to himself and plaintiff as "Husband and Wife as Joint Tenants" and recorded that

12  document with the Placer County Recorder's Office.  (Id.)

13         On October 17, 1997, Donald Riedel filed for marital dissolution and on October

14  17, 2000, plaintiff "bought out Donald Riedel's interest in the subject property by way of

15  "Interspousal Transfer Grant Deed" as part of couple's "Marriage Settlement Agreement."  (Id.)

16  This document was also recorded with the Placer County Recorder's Office.  (Id.)  According to

17  the Interspousal Transfer Grant Deed plaintiff was the sole owner of the subject property.  (Id.)

18  Thereafter, plaintiff contacted the mortgage lender for the subject property, advised that she was

19  now the sole owner and provided all documents necessary to transfer the mortgage on the subject

20  property into her name.  (Id. at 5.)  All subsequent correspondence from the mortgage company

21  regarding the subject property was addressed to plaintiff, including loan statements.  (Id.)

22  Thereafter, plaintiff paid all monthly mortgage payments, property taxes and insurance.  (Id.)

23         In July of 2008, plaintiff contacted a customer service representative for the

24  mortgage company and inquired about a loan modification.  (Id.)  Plaintiff was told by the

---

[2] On December 31, 2012, defendant Quality Loan Service Corporation filed a declaration of nonmonetary status.  (Doc. No. 10.)  No opposition was filed to declaration.  (Doc. No. 17.)

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

representative that to qualify for a loan modification she "would have to be behind on her monthly mortgage payments." (Id.) Plaintiff was, however, assured that "she would not be foreclosed on if she was behind because she was applying for a loan modification." (Id.) In response to this information, plaintiff stopped making her monthly mortgage payments beginning in August of 2008. (Id.)

In September of 2008, plaintiff received from the mortgage company an application for a loan modification, which plaintiff completed and returned. (Id. at 6.) That same month, the mortgage company was purchased by defendant Chase. (Id.) On December 11, 2008, a Notice of Default and Election to Sell was recorded with the Placer County Recorder's Office. (Id.) The notice, however, was provided to Donald Riedel, not to plaintiff. (Id.) On January 28, 2009, defendant Quality substituted in as the trustee. (Id.)

On March 13, 2009, six months after plaintiff submitted her application for a loan modification, she received a second application for a loan modification, this time from Chase. (Id.) Plaintiff was also informed that her first application was submitted on the wrong form even though it was submitted on the form plaintiff was provided by the mortgage company. (Id.) Around this same time a Notice of Trustee's Sale was recorded with the Placer County Recorder's Office. (Id.) Plaintiff, however, was told to disregard this notice because she was in a loan modification. (Id.)

On March 24, 2009, plaintiff faxed over 60 pages of documents in support of her request for a loan modification. (Id. at 7.) Around this same time plaintiff was notified by Vicki Thorne, a Chase representative, that her application for a loan modification was missing documents. (Id.) Plaintiff submitted those missing documents on March 30, 2009. (Id.) The following day Vicki Thorne told plaintiff that the April 1, 2009, trustee sale was being postponed to May 1, 2009. (Id.)

On April 6, 2009, Vicki Thorne told plaintiff that plaintiff needed to provide a "release of taxes for 2007 and 2008." (Id.) Those documents, however, were included with plaintiff's March 24, 2009 submission to Chase. (Id.) On April 30, 2009, the trustee sale was postponed until June 1, 2009. (Id.) Sometime thereafter plaintiff spoke with "Tamela in Monroe,

3

LA," and was informed that the documents she had submitted in March of 2009 "were not entered in the system until July 7, 2009." (Id.) However, on July 31, 2009, plaintiff entered into a "Trial Plan Agreement" with Chase. (Id.)

On October 11, 2009, plaintiff "learned of an unnoticed trustee sale . . . when people came to view her home and informed plaintiff that it was to be auctioned on October 13." (Id.) The trustee sale, however, was postponed to November 13, 2009. (Id.) On November 13, 2009, plaintiff was notified by a Candice Thornton that she would be receiving "documents to be completed." (Id.) These same documents, however, "were previously sent on October 16, 2009. (Id. at 7-8.)

On December 19, 2009, plaintiff received a "Notice of Incomplete Request," requesting "documents still needed to process plaintiff's loan docs" and stating that those documents needed to be mailed to Chase within ten days of the date of the letter. (Id. at 8.) The letter, however, was dated October 30, 2009. (Id.)

On December 31, 2009, plaintiff "resubmitted a new loan modification" by fax to "Chase branch loan manager Brian Kulpa." (Id.) That same day plaintiff spoke with "Chellenne" who informed plaintiff that she needed to start the loan modification process over again because her previously submitted documents had been "sitting since July, 2009" and "were now outdated." (Id.)

On April 5, 2010, a Notice of Trustee's Sale was recorded with the Placer County Recorder's Office. (Id.) Again, the notice was sent to Donald Riedel and not to plaintiff. (Id.) On August 27, 2010, plaintiff filed for bankruptcy, however, that petition was later dismissed. (Id.)

In September of 2010, plaintiff contacted the Home Affordable Modification Program ("HAMP"). (Id.) Plaintiff was informed that a HAMP representative would need to speak with Chase in order to confirm certain information. (Id.) However, on a three-way call with the HAMP representative, plaintiff and a representative from Chase, the HAMP representative stated that the call would need to be recorded. (Id. at 9.) The Chase representative objected to the recording and hung up. (Id.)

4

On January 21, 2011, another Notice of Trustee's Sale was recorded and again it was provided to Donald Riedel and not to plaintiff.[4] (Id.)  On October 17, 2011, plaintiff again attempted to file for bankruptcy, however, that case was also later dismissed.  (Id.)  In January of 2012, defendants Chase and Quality transferred their interests in the subject property to Freddie Mac.  (Id.)

During this period of time plaintiff repeatedly informed Chase that she was the sole owner of the property and that she was not receiving the Notices of Trustee's Sale.  (Id.)  Plaintiff was told to disregard the foreclosure notices and was assured "that the attorneys would be notified of the loan modification" and "that the (wrongly initiated) foreclosure would stop, and that plaintiff's loan modification would be determined."  (Id. at 9.)

Nonetheless, and despite these assurances, plaintiff's home was sold on January 19, 2012, at an unnoticed Trustee's Sale while plaintiff was awaiting a "determination on her Trial Loan Modification."  (Id. at 10.)  At that time, "plaintiff was in a trial loan modification, in active review for a permanent loan modification, and was informed the foreclosure proceedings were on hold pending a determination of her loan modification."  (Id.)

Based on these allegations, plaintiff's amended complaint alleges claims of fraud, breach of trustee's duty, aiding, abetting and conspiring in breach of trustee's duty, the intentional infliction of emotional distress, wrongful foreclosure and Violation of California Bus. & Prof. Code § 17200, as well as claims seeking to "cancel trustee's deed," "set aside trustee sale," and quiet title.[5]  (Am. Compl. (Doc. No. 20) at 25.)

Defendants Freddie Mac and Chase filed a motion to dismiss on March 26, 2013.  (Doc. No. 21.)  Defendant Quality, despite having previously filed an unopposed notice of nonmonetary status, filed a motion to dismiss on April 11, 2013.  (Doc. No. 23.)  Each motion asserts that plaintiff's amended complaint should be dismissed pursuant to Rule 12(b)(6) of the

---

[4] The amended complaint also alleges that plaintiff received notice from her email provider that during an unidentified period of time, thirty-six of plaintiff's emails regarding her loan modification were deleted "without reading."  (Am. Compl. (Doc. No. 20) at 9.)

[5] In the amended complaint plaintiff also asserted a claim for undue influence.  However, she withdrew that claim in her opposition to the pending motions.  (Pl.'s Opp.'n (Doc. No. 32) at 18.)

Federal Rules of Civil Procedure. Plaintiff filed written opposition on May 31, 2013. (Doc. No. 32.) Defendants Freddie Mac and Chase filed a reply on June 6, 2013. (Doc. No. 33.)

## STANDARDS

I. Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. See also Iqbal, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

/////

6

1  not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

ANALYSIS

I.   Res Judicata

Defendants argue that plaintiff "is estopped from bringing her causes of action because she raises the same arguments found in her defense to [the] unlawful detainer" action. (MTD (Doc. No. 21-1) at 12; MTD (Doc. No. 23-1) at 11.) In this regard, defendants request judicial notice of a May 14, 2012 order issued by the Placer County Superior Court in an unlawful detainer action between the parties finding that the foreclosure trustee in this matter fully complied with California Civil Code § 2924, et seq., and entering judgment in favor of Freddie Mac.[6] (RJN (Doc. No. 9-1) at 70-71.)

"[A] judgment in unlawful detainer usually has very limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title." Vella v. Hudgins, 20 Cal.3d 251, 255 (Cal. 1977). There is a limited exception to this rule for subsequent fraud or quiet title suits founded upon allegations of irregularity in a trustee's sale, as those suits are barred as a result of a prior unlawful detainer judgment. Malkoskie v. Option One Mortg. Corp., 188 Cal.App.4th 968, 974 (2010).

---

[6] A court may take judicial notice of its own files and documents filed in other courts. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998); Hott v. City of San Jose, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000); see also FED. R. EVID. 201; Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (on a motion to dismiss, court may consider matters of public record); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (on a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings).

7

"The Malkoskie exception does not apply, however, if the plaintiff's allegations are based on the behavior of the defendant before the foreclosure sale." Helmer v. Bank of America, N.A., No. CIV S-12-0733 KJM GGH, 2013 WL 1192634, at *4 (E.D. Cal. Mar. 22, 2013). See also Sowinski v. Wells Fargo Bank, N.A., No. 11-6431-SC, 2013 WL 706825, at *4 (N.D. Cal. Feb. 26, 2013) ("Accordingly, to the extent that Plaintiff's claim for quiet title is not predicated on alleged deficiencies in the foreclosure process, it is not precluded by the unlawful detainer judgment."); Castle v. Mortgage Electronic Registration Systems, Inc., No. EDCV 11-0538 VAP (DTBx), 2011 WL 3626560, at *6 (C.D. Cal. Aug. 16, 2011) ("Where the fraud alleged in a second action is not connected directly to the trustee's sale, however, relitigation is not barred unless the party asserting res judicata as a defense shows that the plaintiff had a full and fair opportunity to litigate the issue of ownership in the unlawful detainer proceeding."); Johannson v. Wachovia Mortg. FSB, No. C 11-2822 WHA, 2011 WL 3443952, at *10 (N.D. Cal. Aug. 5, 2011) ("Malkoskie is not controlling in the instant action. Plaintiff's remaining claims allege fraudulent conduct in extending a loan to her, and misleading her about whether or when they would foreclose on her home, not the propriety of their actual act of doing so. Defendant's motion to dismiss plaintiff's claims on this ground is Denied.").

Here, plaintiff's claims for wrongful foreclosure, "to set aside trustee sale," "to cancel trustee's deed," "professional negligence and breach of trustee statutory duties," and "aiding, abetting, conspiring in trustees professional negligence/breach of statutory duties," are founded upon allegations of irregularity in the trustee's sale. (Am. Compl. (Doc. No. 20) at 17-21, 25-28.) In support of those claims plaintiff alleges that the trustee failed to provide her with notice of the sale of her home, that the defendants conspired to wrongfully foreclose on plaintiff's home by failing to comply with the notice requirements and that the trustee's deed is invalid due to irregularities at the trustee sale. (Am. Compl. (Doc. No. 20) at 17-19, 25-28.) Because each of these claims is based on alleged irregularities in the trustee's sale, they are barred under the doctrine of res judicata as a result of the prior unlawful detainer judgment. Moreover, although it is unclear from the allegations found in the amended complaint, to the extent plaintiff's claim for quiet title before this court is based on allegations of irregularity in the trustee's sale, that claim

would also barred as a result of the prior unlawful detainer judgment.[7]

Plaintiff's remaining claims, however, concern events allegedly occurring prior to the foreclosure sale and, therefore, are not barred by res judicata.

II.     Unclean Hands

Defendants also argue that plaintiff is barred from pursing this action because plaintiff has unclean hands. Specifically, defendants argue that because plaintiff filed for bankruptcy and appealed the unlawful detainer action for the purpose of delaying and hindering defendants' rightful foreclosure, she may not pursue her claims in this action. (MTD (Doc. No. 21-1) at 14; MTD (Doc. No. 23-1) at 13.)

The doctrine of unclean hands requires "that a plaintiff act fairly in the matter for which [s]he seeks a remedy." Mendoza v. Ruesga, 169 Cal. App.4th 270, 279 (2008). "[I]t is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of [her] claim." Id. The doctrine applies where a plaintiff acted unconscionably, or exhibited bad faith or inequitable conduct in connection with the matter in controversy. Id. "Unclean hands . . . provides a complete defense to both legal and equitable causes of action." Id. See also Adler v. Fed. Republic of Nigeria, 219 F.3d 869, 877 (9th Cir. 2000) ("In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones.").

However, the doctrine of unclean hands applies "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245 (1933). In applying this doctrine, the court is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Id. at 245-46. See also

---

[7] In addition to being vague and conclusory, plaintiff's quiet title claim fails to allege tender on the part of plaintiff. In this regard, "a purported quiet title claim is doomed in the absence of a tender of amounts owed." Allen v. U.S. Bank, Nat. Ass'n, No. CV F 13-1527 LJO SMS, 2013 WL 5587389, at *5 (E.D. Cal. Oct. 10, 2013). See also Deerinck v. Heritage Plaza Mortg. Inc., No. 2:11-cv-1735 MCE EFB, 2012 WL 1085520, at *9 (E.D. Cal. Mar. 30, 2012) ("[T]o maintain a quiet title claim, a plaintiff is required to allege tender of the proceeds of the loan at the pleading stage.")

Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc., 621 F.3d 981, 986 (9th Cir. 2010) ("The application of the equitable doctrine of unclean hands is within the discretion of the trial court and is reviewed for abuse of that discretion.").

Here, the undersigned has considered defendants' arguments and finds nothing unconscionable about plaintiff's exercise of her right to pursue bankruptcy or appellate review with respect to the state court unlawful detainer action. Accordingly, defendants' unclean hands argument is rejected as a grounds for dismissal.

### III.     Fraud

Plaintiff's amended complaint alleges that "a customer service representative" falsely told plaintiff that in order to qualify for a loan modification plaintiff needed to be delinquent on her monthly mortgage payments. (Am. Compl. (Doc. No. 20) at 5.) The amended complaint also alleges that plaintiff was told that her home would not be foreclosed upon, despite her failure to pay her monthly mortgage payments, because she was applying for a loan modification. (Id.)

Defendants argue that the amended complaint fails to allege any of the necessary elements of a claim of fraud with sufficient particularity. (MTD (Doc. No. 21-1) at 16; MTD (Doc. No. 23-1) at 15.) Defendants contend that plaintiff has failed to even identify the name of the person who committed the alleged fraud in her amended complaint. (Id.) In opposition to defendants' motions, plaintiff asserts that the amended complaint does identify who committed the alleged fraud, i.e. a "customer service representative." (Pl.'s Opp.'n (Doc. No. 32) at 3.)

The elements of a claim of fraud under California law are: (1) a misrepresentation; (2) with knowledge of its falsity; (3) with the intent to induce another's reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damage. Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009). Under Federal Rule of Civil Procedure 9(b), fraud-based claims must be pled with "particularity." Thus, "[a]verments of fraud must be accompanied by the who, what, when, where and how of misconduct charged" to give defendants notice of the particular conduct they must defend. Vess v. Ciba-Geigy Corp.USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). "In a fraud action against a corporation, a

plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" Khan v. CitiMortgage, Inc., No. CV F 13-1378 LJO JLT, 2013 WL 5486777, at *7 (E.D. Cal. Sept. 30, 2013) (quoting Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.App.4th 153, 157 (1991)).

Here, plaintiff's amended complaint fails to name the person or persons who made the allegedly fraudulent representations. Accordingly, defendants' motions to dismiss will be granted as to plaintiff's claim of fraud.

IV.     Intentional Infliction of Emotional Distress ("IIED")

The elements of a claim for IIED under California law are: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009)). The conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 46 Cal.4th at 1051 (internal citations and quotations omitted). "The act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." Quinteros v. Aurora Loan Servs., 740 F.Supp.2d 1163, 1172 (E.D. Cal. 2010).

Although plaintiff's amended complaint alleges that the defendants "never intended to modify plaintiff's loan" and that the "plan from the beginning was to induce plaintiff to default on her loan in order to foreclose," plaintiff does not allege any facts in support of this assertion. In this regard, the allegations found in the amended complaint fail to state a cognizable claim for IIED. See Helmer v. Bank of America, N.A., No. 2:12-cv-0733 TLN CKD, 2013 WL 4546285, at *7 (E.D. Cal. Aug. 27, 2013) ("Plaintiff only states that Defendant intended to foreclose on Plaintiff's property. This allegation in-and-of-itself is insufficient to state a plausible claim."); Mehta v. Wells Fargo Bank, N.A., 737 F.Supp.2d 1185, 1204 (S.D. Cal. 2010) ("The

11

fact that one of Defendant Wells Fargo's employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context.").

V.   California Business & Professions Code §17200

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." CAL BUS. & PROF. CODE § 17200. Section 17200 incorporates other laws and treats a violation of those laws as an unlawful business practice independently actionable under California state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). "In order to state a claim for a violation of the [§ 17200], a plaintiff must allege that the defendant committed a business act that is either fraudulent, unlawful, or unfair." Levine v. Blue Shield of California, 189 Cal.App.4th 1117, 1136 (2010). If a plaintiff fails to establish a violation of some other law, the allegation of a § 17200 claim will also fail. Pantoja v. Countrywide Home Loans, Inc., 640 F.Supp.2d 1177, 1190 (N.D. Cal. 2009) ("[S]ince the court has dismissed all of Plaintiff's predicate violations, Plaintiff cannot state a claim under the unlawful business practices prong of the UCL.").

Here, the court finds that plaintiff's amended complaint fails to state any other valid claim. Accordingly, plaintiff's claim for violation of California Business & Professions Code § 17200 also fails and defendants' motions to dismiss will be granted as to this claim.

LEAVE TO AMEND

For the reasons explained above, defendants' motions to dismiss will be granted and plaintiff's amended complaint dismissed for failure to state a claim upon which relief may be granted. The court has carefully considered whether plaintiff may further amend her complaint to state a claim upon which relief can be granted. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988). See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments). However, when evaluating the failure to state a claim, the complaint of a pro se plaintiff may be dismissed "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'" Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972). See also Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

Here, with respect to the amended complaint's causes of action that are barred by res judicata, it appears beyond doubt that plaintiff cannot further amend her complaint to state a claim upon which relief may be granted. The court also finds it clear that plaintiff cannot successfully amend her IIED allegations to state a cognizable claim.

However, with respect to plaintiff's claims of fraud, violation of §17200 and possibly plaintiff's quiet title claim, the court cannot say at this time that it appears beyond doubt that plaintiff can allege and prove no set of facts in support of her claims which would entitle her to relief. Moreover, construing the allegation found in plaintiff's amended complaint in the light most favorable to her, plaintiff may be able to further amend her complaint to allege additional claims. In this regard, it may be possible for plaintiff to successfully amend her complaint to allege a valid claim of promissory estoppel.[8] Similarly, it may be possible for plaintiff to

---

[8] "The elements of promissory estoppel are: (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed." Quinteros v. Aurora Loan Servs., 740 F.Supp.2d 1163, 1171 (E.D. Cal. 2010) (citing Poway Royal Mobilehome Owners Ass'n v. City of Poway, 149 Cal.App.4th 1460, 1471 (2007)). Courts, presented with similar factual allegations as those at issue in this action, have found valid promissory estoppel claims. See Harris v. Wells Fargo Bank, N.A., No. 12-cv-5629 JST, 2013 WL 1820003, at *10-11 (N.D. Cal. Apr. 30, 2013) ("Plaintiff here alleges that Wells Fargo, through its representatives, repeatedly promised her that her failure to make monthly payments would not result in default, late fees, or negative credit consequences during the pendency of her loan modification application. Relying on that promise, in a reasonable manner entirely foreseeable by Wells Fargo, Plaintiff refrained from making her monthly payments. Wells Fargo then charged Plaintiff late fees, recorded a notice of default, and reported her failure to pay to credit agencies. Plaintiff alleges that she was injured because absent the promise she would have paid her monthly mortgage payments, and that her reliance on the promise resulted in negative credit consequences, late fees, and foreclosure proceedings. Nothing more is required to adequately plead a promissory estoppel claim."); Helmer v. Bank of America, N.A., No. CIV S-12-0733 KJM GGH, 2013 WL 1192634, at *4 (E.D. Cal. Mar. 22, 2013) ("Here, plaintiff's cause of action for promissory estoppel alleges that defendant promised it would not foreclose on the house during the loan modification and refinancing process, that plaintiff reasonably relied on this promise, inducing plaintiff to not make his mortgage payments, and that plaintiff suffered

successfully amend her complaint to allege a valid negligence claim.[9]

Accordingly, the court cannot say that it is now beyond doubt that the granting of further leave to amend would be futile.  Plaintiff's amended complaint will therefore be dismissed with leave granted to file a second amended complaint.  Plaintiff is cautioned, however, that if she elects to file an amended complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

---

detriment when his house was sold at foreclosure sale."); Harvey v. Bank of Am., N.A., 906 F.Supp.2d 982, 993-94 (N.D. Cal. 2012) (plaintiff sufficiently stated promissory estoppel claim by alleging that the bank encouraged plaintiff to stop making mortgage payments so that he could qualify for a loan modification, but then contrary to promise, denied modification application and instituted foreclosure proceedings); Solomon v. Aurora Loan Services LLC, No. CIV. 2:12-cv-209 WBS KJN, 2012 WL 2577559, at *6 (E.D. Cal. July 3, 2012) ("Here, defendant allegedly promised that they would not foreclose on plaintiff's property while her HAMP application was pending.  Plaintiff allegedly could have paid back the arrearage to reinstate her loan, but followed defendant's advice to delay payment until after the results of her most recent HAMP application were in.  This step was taken in reasonable reliance on defendant's promise, and was foreseeable as it was precisely what defendant's agent advised her to do.  Plaintiff suffered injury as a result of her reliance because her home was foreclosed on before her HAMP application was resolved.  She has therefore sufficiently alleged the elements of a promissory estoppel claim."); Sutherland v. Barclays American/Mortgage Corp., 53 Cal.App.4th 299, 312 (1997) (mortgagor relied to her detriment on mortgagee's statement that she could postpone three payments without incurring foreclosure).

[9] The elements of negligence are "duty, breach of duty, causation, and damages."  Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.3d 583, 588 (1989).  Although as a general rule financial institutions owe no duty of care to a borrower, presented with allegations similar to those at issue in this action, courts have found that plaintiffs have stated cognizable negligence claims.  See McGarvey v. JP Morgan Chase Bank, N.A., No. 2:13-cv-1099 KJM EFB, 2013 WL 5597148, at *7 (E.D. Cal. Oct. 11, 2013) ("Defendant owes plaintiff and those in similar circumstances a duty to exercise ordinary care in the loan modification process."); Ansanelli v. JP Morgan Chase Bank, N.A., No. C 10-3892 WHA, 2011 WL 1134451, at *7-8 (N.D. Cal. Mar. 28, 2011) ("Yet the complaint alleges that defendant went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan.  Contrary to defendant, this is precisely 'beyond the domain of a usual money lender.'  Plaintiffs' allegations constitute sufficient active participation to create a duty of care to plaintiffs to support a claim for negligence."); Garcia v. Ocwen Loan Servicing, LLC, No. C 10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010) ("Here, by asking Plaintiff to submit supporting documentation, Defendant undertook the activity of processing Plaintiff's loan modification request.  Having undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out the task.").

1  Iqbal, 556 U.S. at 678.  "While legal conclusions can provide the complaint's framework, they
2  must be supported by factual allegations."  Id. at 679.  Those facts must be sufficient to push the
3  claims "across the line from conceivable to plausible[.]"  Id. at 680 (quoting Twombly, 550 U.S.
4  at 557).

5  In this regard, although the Federal Rules of Civil Procedure adopt a flexible
6  pleading policy, a complaint must give the defendant fair notice of the plaintiff's claims and must
7  allege facts that state the elements of each claim plainly and succinctly.  FED. R. CIV. P. 8(a)(2);
8  Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers
9  'labels and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'
10 Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual
11 enhancements.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).  A plaintiff
12 must allege with at least some degree of particularity overt acts which the defendants engaged in
13 that support the plaintiff's claims.  Jones, 733 F.2d at 649.

14 Plaintiff is also reminded that the court cannot refer to a prior pleading in order to
15 make an amended complaint complete.  Local Rule 220 requires that any amended complaint be
16 complete in itself without reference to prior pleadings.  The second amended complaint will
17 supersede the first amended complaint which superseded the original complaint.  See Loux v.
18 Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, in any second amended complaint plaintiff may
19 elect to file, just as if it were the initial complaint filed in the case, each defendant must be listed
20 in the caption and identified in the body of the complaint, and each claim and the involvement of
21 each defendant must be sufficiently alleged.  Any second amended complaint filed by plaintiff
22 must include concise but complete factual allegations describing the conduct and events which
23 underlie her claims.

24 <center>CONCLUSION</center>
25 Accordingly, IT IS HEREBY ORDERED that:
26 1. Defendants Federal Home Loan Mortgage Corporation and JP Morgan Chase
27 Bank's March 26, 2013 motion to dismiss (Doc. No. 21) is granted;
28 /////

2. Defendant Quality Loan Service Corporation's April 11, 2013 motion to dismiss (Doc. No. 23) is granted;

3. Plaintiff's March 12, 2013 amended complaint (Doc. No. 20) is dismissed;

4. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Federal Rules of Civil Procedure, and the Local Rules of Practice; any amended complaint plaintiff elects to file must bear the docket number assigned to this case and must be labeled "Second Amended Complaint;" failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed; and

5. If any defendant named in plaintiff's original complaint, or in plaintiff's amended complaint, is named as a defendant in the second amended complaint plaintiff may elect to file, that defendant shall respond to the pleading within thirty days after it is filed and served.

Dated:  November 12, 2013

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.pro se\riedel2819.mtd.ord.docx