1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SOFIA CAMPOS-RIEDEL,                      No.  2:12-cv-2819 TLN DAD PS

12                 Plaintiff,

13        v.                                   ORDER

14   JP MORGAN CHASE, et al.,

15                 Defendants.

16

17               This matter came before the court on June 14, 2013, for hearing of defendants'

18   motions to dismiss.  Plaintiff Sofia Campos-Riedel appeared on her own behalf.  Attorney

19   Gregory Belnap appeared telephonically on behalf of the defendants.  For the reasons stated

20   below, defendants' motions will be granted.

21                                   BACKGROUND

22               Plaintiff commenced this action on October 16, 2012, by filing a complaint in the

23   Placer County Superior Court.  (Doc. No. 1 at 5.)  Defendants removed the matter to this court on

24   November 11, 2012, pursuant to 12 U.S.C. § 1452(f).[1]  On December 3, 2012, defendants Federal

25   Home Loan Mortgage Corporation ("Freddie Mac"), and JP Morgan Chase, ("Chase"), filed a

26   _____

27   [1]  Title 12 U.S.C. § 1452(f) provides that "all civil actions to which [Freddie Mac] is a party shall
     be deemed to arise under the laws of the United States, and the district courts of the United States
28   shall have original jurisdiction of all such actions, without regard to amount or value".

                                          1

1  motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

2  Procedure.[2]  (Doc. No. 6.)  On February 22, 2013, the parties appeared before the undersigned

3  and plaintiff requested leave to file an amended complaint.  On February 25, 2013, the

4  undersigned issued an order granting plaintiff leave to file an amend complaint and denying

5  defendants' motion to dismiss without prejudice as having been rendered moot.  (Doc. No. 19.)

6         Plaintiff filed her amended complaint on March 12, 2013.  (Doc. No. 20.)  Therein,

7  plaintiff alleges, in relevant part, as follows.  On December 14, 1993, Donald Riedel purchased

8  the property at issue in this action ("subject property") through a mortgage company with a loan

9  provided by defendant Freddie Mac.  (Am. Compl. (Doc. No. 20) at 4.[3])  Plaintiff married Donald

10  Riedel on September 17, 1994.  (Id.)  On August 25, 1996, Donald Riedel deeded the subject

11  property to himself and plaintiff as "Husband and Wife as Joint Tenants" and recorded that

12  document with the Placer County Recorder's Office.  (Id.)

13         On October 17, 1997, Donald Riedel filed for marital dissolution and on October

14  17, 2000, plaintiff "bought out Donald Riedel's interest in the subject property by way of

15  "Interspousal Transfer Grant Deed" as part of couple's "Marriage Settlement Agreement."  (Id.)

16  This document was also recorded with the Placer County Recorder's Office.  (Id.)  According to

17  the Interspousal Transfer Grant Deed plaintiff was the sole owner of the subject property.  (Id.)

18  Thereafter, plaintiff contacted the mortgage lender for the subject property, advised that she was

19  now the sole owner and provided all documents necessary to transfer the mortgage on the subject

20  property into her name.  (Id. at 5.)  All subsequent correspondence from the mortgage company

21  regarding the subject property was addressed to plaintiff, including loan statements.  (Id.)

22  Thereafter, plaintiff paid all monthly mortgage payments, property taxes and insurance.  (Id.)

23         In July of 2008, plaintiff contacted a customer service representative for the

24  mortgage company and inquired about a loan modification.  (Id.)  Plaintiff was told by the

25

26  [2]  On December 31, 2012, defendant Quality Loan Service Corporation filed a declaration of
    nonmonetary status.  (Doc. No. 10.)  No opposition was filed to declaration.  (Doc. No. 17.)

27

28  [3]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
    system and not to page numbers assigned by the parties.

2

1  representative that to qualify for a loan modification she "would have to be behind on her

2  monthly mortgage payments." (Id.) Plaintiff was, however, assured that "she would not be

3  foreclosed on if she was behind because she was applying for a loan modification." (Id.) In

4  response to this information, plaintiff stopped making her monthly mortgage payments beginning

5  in August of 2008. (Id.)

6            In September of 2008, plaintiff received from the mortgage company an

7  application for a loan modification, which plaintiff completed and returned. (Id. at 6.) That same

8  month, the mortgage company was purchased by defendant Chase. (Id.) On December 11, 2008,

9  a Notice of Default and Election to Sell was recorded with the Placer County Recorder's Office.

10  (Id.) The notice, however, was provided to Donald Riedel, not to plaintiff. (Id.) On January 28,

11  2009, defendant Quality substituted in as the trustee. (Id.)

12            On March 13, 2009, six months after plaintiff submitted her application for a loan

13  modification, she received a second application for a loan modification, this time from Chase.

14  (Id.) Plaintiff was also informed that her first application was submitted on the wrong form even

15  though it was submitted on the form plaintiff was provided by the mortgage company. (Id.)

16  Around this same time a Notice of Trustee's Sale was recorded with the Placer County

17  Recorder's Office. (Id.) Plaintiff, however, was told to disregard this notice because she was in a

18  loan modification. (Id.)

19            On March 24, 2009, plaintiff faxed over 60 pages of documents in support of her

20  request for a loan modification. (Id. at 7.) Around this same time plaintiff was notified by Vicki

21  Thorne, a Chase representative, that her application for a loan modification was missing

22  documents. (Id.) Plaintiff submitted those missing documents on March 30, 2009. (Id.) The

23  following day Vicki Thorne told plaintiff that the April 1, 2009, trustee sale was being postponed

24  to May 1, 2009. (Id.)

25            On April 6, 2009, Vicki Thorne told plaintiff that plaintiff needed to provide a

26  "release of taxes for 2007 and 2008." (Id.) Those documents, however, were included with

27  plaintiff's March 24, 2009 submission to Chase. (Id.) On April 30, 2009, the trustee sale was

28  postponed until June 1, 2009. (Id.) Sometime thereafter plaintiff spoke with "Tamela in Monroe,

3

1    LA," and was informed that the documents she had submitted in March of 2009 "were not entered

2    in the system until July 7, 2009." (Id.)  However, on July 31, 2009, plaintiff entered into a "Trial

3    Plan Agreement" with Chase.  (Id.)

4            On October 11, 2009, plaintiff "learned of an unnoticed trustee sale . . . when

5    people came to view her home and informed plaintiff that it was to be auctioned on October 13."

6    (Id.)  The trustee sale, however, was postponed to November 13, 2009.  (Id.)  On November 13,

7    2009, plaintiff was notified by a Candice Thornton that she would be receiving "documents to be

8    completed."  (Id.)  These same documents, however, "were previously sent on October 16, 2009.

9    (Id. at 7-8.)

10           On December 19, 2009, plaintiff received a "Notice of Incomplete Request,"

11   requesting "documents still needed to process plaintiff's loan docs" and stating that those

12   documents needed to be mailed to Chase within ten days of the date of the letter.  (Id. at 8.)  The

13   letter, however, was dated October 30, 2009.  (Id.)

14           On December 31, 2009, plaintiff "resubmitted a new loan modification" by fax to

15   "Chase branch loan manager Brian Kulpa."  (Id.)  That same day plaintiff spoke with "Chellenne"

16   who informed plaintiff that she needed to start the loan modification process over again because

17   her previously submitted documents had been "sitting since July, 2009" and "were now

18   outdated."  (Id.)

19           On April 5, 2010, a Notice of Trustee's Sale was recorded with the Placer County

20   Recorder's Office.  (Id.)  Again, the notice was sent to Donald Riedel and not to plaintiff.  (Id.)

21   On August 27, 2010, plaintiff filed for bankruptcy, however, that petition was later dismissed.

22   (Id.)

23           In September of 2010, plaintiff contacted the Home Affordable Modification

24   Program ("HAMP").  (Id.)  Plaintiff was informed that a HAMP representative would need to

25   speak with Chase in order to confirm certain information.  (Id.)  However, on a three-way call

26   with the HAMP representative, plaintiff and a representative from Chase, the HAMP

27   representative stated that the call would need to be recorded.  (Id. at 9.)  The Chase representative

28   objected to the recording and hung up.  (Id.)

4

1    On January 21, 2011, another Notice of Trustee's Sale was recorded and again it

2    was provided to Donald Riedel and not to plaintiff.[4]  (Id.)  On October 17, 2011, plaintiff again

3    attempted to file for bankruptcy, however, that case was also later dismissed.  (Id.)  In January of

4    2012, defendants Chase and Quality transferred their interests in the subject property to Freddie

5    Mac.  (Id.)

6    During this period of time plaintiff repeatedly informed Chase that she was the

7    sole owner of the property and that she was not receiving the Notices of Trustee's Sale.  (Id.)

8    Plaintiff was told to disregard the foreclosure notices and was assured "that the attorneys would

9    be notified of the loan modification" and "that the (wrongly initiated) foreclosure would stop, and

10   that plaintiff's loan modification would be determined."  (Id. at 9.)

11   Nonetheless, and despite these assurances, plaintiff's home was sold on January

12   19, 2012, at an unnoticed Trustee's Sale while plaintiff was awaiting a "determination on her

13   Trial Loan Modification."  (Id. at 10.)  At that time, "plaintiff was in a trial loan modification, in

14   active review for a permanent loan modification, and was informed the foreclosure proceedings

15   were on hold pending a determination of her loan modification."  (Id.)

16   Based on these allegations, plaintiff's amended complaint alleges claims of fraud,

17   breach of trustee's duty, aiding, abetting and conspiring in breach of trustee's duty, the intentional

18   infliction of emotional distress, wrongful foreclosure and Violation of California Bus. & Prof.

19   Code § 17200, as well as claims seeking to "cancel trustee's deed," "set aside trustee sale," and

20   quiet title.[5]  (Am. Compl. (Doc. No. 20) at 25.)

21   Defendants Freddie Mac and Chase filed a motion to dismiss on March 26, 2013.

22   (Doc. No. 21.)  Defendant Quality, despite having previously filed an unopposed notice of

23   nonmonetary status, filed a motion to dismiss on April 11, 2013.  (Doc. No. 23.)  Each motion

24   asserts that plaintiff's amended complaint should be dismissed pursuant to Rule 12(b)(6) of the

25   [4]  The amended complaint also alleges that plaintiff received notice from her email provider that

26   during an unidentified period of time, thirty-six of plaintiff's emails regarding her loan
     modification were deleted "without reading."  (Am. Compl. (Doc. No. 20) at 9.)

27   [5]  In the amended complaint plaintiff also asserted a claim for undue influence.  However, she

28   withdrew that claim in her opposition to the pending motions.  (Pl.'s Opp.'n (Doc. No. 32) at 18.)

5

1   Federal Rules of Civil Procedure.  Plaintiff filed written opposition on May 31, 2013.  (Doc. No.

2   32.)  Defendants Freddie Mac and Chase filed a reply on June 6, 2013.  (Doc. No. 33.)

3                                            STANDARDS

4   I.  Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)

5            The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

6   sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

7   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

8   sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

9   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

10  relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A

11  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

12  the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

13  Iqbal, 556 U.S. 662, 678 (2009).

14           In determining whether a complaint states a claim on which relief may be granted,

15  the court accepts as true the allegations in the complaint and construes the allegations in the light

16  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

17  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

18  stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

19  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

20  form of factual allegations.  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

21  Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

22  an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A

23  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

24  elements of a cause of action."  Twombly, 550 U.S. at 555.  See also Iqbal, 556 U.S. at 676

25  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

27  facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

28  /////

                                                    6

1    not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,

2    459 U.S. 519, 526 (1983).

3            In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is

4    permitted to consider material which is properly submitted as part of the complaint, documents

5    that are not physically attached to the complaint if their authenticity is not contested and the

6    plaintiff's complaint necessarily relies on them, and matters of public record. Lee v. City of Los

7    Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

8                                              ANALYSIS

9    I.      Res Judicata

10           Defendants argue that plaintiff "is estopped from bringing her causes of action

11   because she raises the same arguments found in her defense to [the] unlawful detainer" action.

12   (MTD (Doc. No. 21-1) at 12; MTD (Doc. No. 23-1) at 11.)  In this regard, defendants request

13   judicial notice of a May 14, 2012 order issued by the Placer County Superior Court in an

14   unlawful detainer action between the parties finding that the foreclosure trustee in this matter

15   fully complied with California Civil Code § 2924, et seq., and entering judgment in favor of

16   Freddie Mac.[6]  (RJN (Doc. No. 9-1) at 70-71.)

17           "[A] judgment in unlawful detainer usually has very limited res judicata effect and

18   will not prevent one who is dispossessed from bringing a subsequent action to resolve questions

19   of title." Vella v. Hudgins, 20 Cal.3d 251, 255 (Cal. 1977).  There is a limited exception to this

20   rule for subsequent fraud or quiet title suits founded upon allegations of irregularity in a trustee's

21   sale, as those suits are barred as a result of a prior unlawful detainer judgment. Malkoskie v.

22   Option One Mortg. Corp., 188 Cal.App.4th 968, 974 (2010).

23

24   _____

     [6]  A court may take judicial notice of its own files and documents filed in other courts. Reyn's

25   Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006); Burbank-Glendale-
     Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998); Hott v. City of

26   San Jose, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000); see also FED. R. EVID. 201; Lee v. City of Los
     Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (on a motion to dismiss, court may consider

27   matters of public record); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (on
     a motion to dismiss, the court may take judicial notice of matters of public record outside the

28   pleadings).

                                                    7

1   "The <u>Malkoskie</u> exception does not apply, however, if the plaintiff's allegations

2   are based on the behavior of the defendant before the foreclosure sale." <u>Helmer v. Bank of</u>

3   <u>America, N.A.</u>, No. CIV S-12-0733 KJM GGH, 2013 WL 1192634, at *4 (E.D. Cal. Mar. 22,

4   2013). <u>See</u> <u>also</u> <u>Sowinski v. Wells Fargo Bank, N.A.</u>, No. 11-6431-SC, 2013 WL 706825, at *4

5   (N.D. Cal. Feb. 26, 2013) ("Accordingly, to the extent that Plaintiff's claim for quiet title is not

6   predicated on alleged deficiencies in the foreclosure process, it is not precluded by the unlawful

7   detainer judgment."); <u>Castle v. Mortgage Electronic Registration Systems, Inc.</u>, No. EDCV 11-

8   0538 VAP (DTBx), 2011 WL 3626560, at *6 (C.D. Cal. Aug. 16, 2011) ("Where the fraud

9   alleged in a second action is not connected directly to the trustee's sale, however, relitigation is

10   not barred unless the party asserting res judicata as a defense shows that the plaintiff had a full

11   and fair opportunity to litigate the issue of ownership in the unlawful detainer proceeding.");

12   <u>Johansson v. Wachovia Mortg. FSB</u>, No. C 11-2822 WHA, 2011 WL 3443952, at *10 (N.D. Cal.

13   Aug. 5, 2011) ("<u>Malkoskie</u> is not controlling in the instant action.  Plaintiff's remaining claims

14   allege fraudulent conduct in extending a loan to her, and misleading her about whether or when

15   they would foreclose on her home, not the propriety of their actual act of doing so.  Defendant's

16   motion to dismiss plaintiff's claims on this ground is Denied.").

17   Here, plaintiff's claims for wrongful foreclosure, "to set aside trustee sale," "to

18   cancel trustee's deed," "professional negligence and breach of trustee statutory duties," and

19   "aiding, abetting, conspiring in trustees professional negligence/breach of statutory duties," are

20   founded upon allegations of irregularity in the trustee's sale.  (Am. Compl. (Doc. No. 20) at 17-

21   21, 25-28.)  In support of those claims plaintiff alleges that the trustee failed to provide her with

22   notice of the sale of her home, that the defendants conspired to wrongfully foreclose on plaintiff's

23   home by failing to comply with the notice requirements and that the trustee's deed is invalid due

24   to irregularities at the trustee sale.  (Am. Compl. (Doc. No. 20) at 17-19, 25-28.)  Because each

25   of these claims is based on alleged irregularities in the trustee's sale, they are barred under the

26   doctrine of res judicata as a result of the prior unlawful detainer judgment.  Moreover, although it

27   is unclear from the allegations found in the amended complaint, to the extent plaintiff's claim for

28   quiet title before this court is based on allegations of irregularity in the trustee's sale, that claim

1    would also barred as a result of the prior unlawful detainer judgment.[7]

2           Plaintiff's remaining claims, however, concern events allegedly occurring prior to

3    the foreclosure sale and, therefore, are not barred by res judicata.

4       II.    Unclean Hands

5           Defendants also argue that plaintiff is barred from pursing this action because

6    plaintiff has unclean hands.  Specifically, defendants argue that because plaintiff filed for

7    bankruptcy and appealed the unlawful detainer action for the purpose of delaying and hindering

8    defendants' rightful foreclosure, she may not pursue her claims in this action.  (MTD (Doc. No.

9    21-1) at 14; MTD (Doc. No. 23-1) at 13.)

10          The doctrine of unclean hands requires "that a plaintiff act fairly in the matter for

11   which [s]he seeks a remedy."  Mendoza v. Ruesga, 169 Cal. App.4th 270, 279 (2008).  "[I]t is an

12   equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the

13   plaintiff should not recover, regardless of the merits of [her] claim."  Id.  The doctrine applies

14   where a plaintiff acted unconscionably, or exhibited bad faith or inequitable conduct in

15   connection with the matter in controversy.  Id.  "Unclean hands . . . provides a complete defense

16   to both legal and equitable causes of action."  Id.  See also Adler v. Fed. Republic of Nigeria, 219

17   F.3d 869, 877 (9th Cir. 2000) ("In California, the unclean hands doctrine applies not only to

18   equitable claims, but also to legal ones.").

19          However, the doctrine of unclean hands applies "only where some unconscionable

20   act of one coming for relief has immediate and necessary relation to the equity that he seeks in

21   respect of the matter in litigation."  Keystone Driller Co. v. General Excavator Co., 290 U.S. 240,

22   245 (1933).  In applying this doctrine, the court is "not bound by formula or restrained by any

23   limitation that tends to trammel the free and just exercise of discretion."  Id. at 245-46.  See also

24   —————————————————

25   [7]  In addition to being vague and conclusory, plaintiff's quiet title claim fails to allege tender on
     the part of plaintiff.  In this regard, "a purported quiet title claim is doomed in the absence of a
26   tender of amounts owed."  Allen v. U.S. Bank, Nat. Ass'n, No. CV F 13-1527 LJO SMS, 2013
     WL 5587389, at *5 (E.D. Cal. Oct. 10, 2013).  See also Deerinck v. Heritage Plaza Mortg. Inc.,
27   No. 2:11-cv-1735 MCE EFB, 2012 WL 1085520, at *9 (E.D. Cal. Mar. 30, 2012) ("[T]o maintain
     a quiet title claim, a plaintiff is required to allege tender of the proceeds of the loan at the
28   pleading stage.")

1    Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc., 621 F.3d 981, 986

2    (9th Cir. 2010) ("The application of the equitable doctrine of unclean hands is within the

3    discretion of the trial court and is reviewed for abuse of that discretion.").

4          Here, the undersigned has considered defendants' arguments and finds nothing

5    unconscionable about plaintiff's exercise of her right to pursue bankruptcy or appellate review

6    with respect to the state court unlawful detainer action.  Accordingly, defendants' unclean hands

7    argument is rejected as a grounds for dismissal.

8    III.     Fraud

9          Plaintiff's amended complaint alleges that "a customer service representative"

10    falsely told plaintiff that in order to qualify for a loan modification plaintiff needed to be

11    delinquent on her monthly mortgage payments.  (Am. Compl. (Doc. No. 20) at 5.)  The amended

12    complaint also alleges that plaintiff was told that her home would not be foreclosed upon, despite

13    her failure to pay her monthly mortgage payments, because she was applying for a loan

14    modification.  (Id.)

15          Defendants argue that the amended complaint fails to allege any of the necessary

16    elements of a claim of fraud with sufficient particularity.  (MTD (Doc. No. 21-1) at 16; MTD

17    (Doc. No. 23-1) at 15.)  Defendants contend that plaintiff has failed to even identify the name of

18    the person who committed the alleged fraud in her amended complaint.  (Id.)  In opposition to

19    defendants' motions, plaintiff asserts that the amended complaint does identify who committed

20    the alleged fraud, i.e. a "customer service representative."  (Pl.'s Opp.'n (Doc. No. 32) at 3.)

21          The elements of a claim of fraud under California law are:  (1) a

22    misrepresentation; (2) with knowledge of its falsity; (3) with the intent to induce another's

23    reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damage.  Kearns v.

24    Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  Under Federal Rule of Civil Procedure

25    9(b), fraud-based claims must be pled with "particularity."  Thus, "[a]verments of fraud must be

26    accompanied by the who, what, when, where and how of misconduct charged" to give defendants

27    notice of the particular conduct they must defend.  Vess v. Ciba-Geigy Corp.USA, 317 F.3d 1097,

28    1106 (9th Cir. 2003) (internal quotations omitted).  "In a fraud action against a corporation, a

1    plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations,

2    their authority to speak, to whom they spoke, what they said or wrote, and when it was said or

3    written.'" Khan v. CitiMortgage, Inc., No. CV F 13-1378 LJO JLT, 2013 WL 5486777, at *7

4    (E.D. Cal. Sept. 30, 2013) (quoting Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.App.4th

5    153, 157 (1991)).

6           Here, plaintiff's amended complaint fails to name the person or persons who made

7    the allegedly fraudulent representations.  Accordingly, defendants' motions to dismiss will be

8    granted as to plaintiff's claim of fraud.

9    IV.    Intentional Infliction of Emotional Distress ("IIED")

10          The elements of a claim for IIED under California law are:  "'(1) extreme and

11   outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

12   probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

13   emotional distress; and (3) actual and proximate causation of the emotional distress by the

14   defendant's outrageous conduct.'" Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245 (9th

15   Cir. 2013) (quoting Hughes v. Pair, 46 Cal.4th 1035, 1050 (2009)).  The conduct must be "so

16   extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 46

17   Cal.4th at 1051 (internal citations and quotations omitted).  "The act of foreclosing on a home

18   (absent other circumstances) is not the kind of extreme conduct that supports an intentional

19   infliction of emotional distress claim." Quinteros v. Aurora Loan Servs., 740 F.Supp.2d 1163,

20   1172  (E.D. Cal. 2010).

21          Although plaintiff's amended complaint alleges that the defendants "never

22   intended to modify plaintiff's loan" and that the "plan from the beginning was to induce plaintiff

23   to default on her loan in order to foreclose," plaintiff does not allege any facts in support of this

24   assertion.  In this regard, the allegations found in the amended complaint fail to state a cognizable

25   claim for IIED.  See Helmer v. Bank of America, N.A., No. 2:12-cv-0733 TLN CKD, 2013 WL

26   4546285, at *7 (E.D. Cal. Aug. 27, 2013) ("Plaintiff only states that Defendant intended to

27   foreclose on Plaintiff's property.  This allegation in-and-of-itself is insufficient to state a plausible

28   claim."); Mehta v. Wells Fargo Bank, N.A., 737 F.Supp.2d 1185, 1204 (S.D. Cal. 2010) ("The

                                             11

1   fact that one of Defendant Wells Fargo's employees allegedly stated that the sale would not occur

2   but the house was sold anyway is not outrageous as that word is used in this context.").

3   V.      California Business & Professions Code §17200

4          California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent

5   business act or practice." CAL BUS. & PROF. CODE § 17200.  Section 17200 incorporates other

6   laws and treats a violation of those laws as an unlawful business practice independently

7   actionable under California state law.  Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042,

8   1048 (9th Cir. 2000).  "In order to state a claim for a violation of the [§ 17200], a plaintiff must

9   allege that the defendant committed a business act that is either fraudulent, unlawful, or unfair."

10  Levine v. Blue Shield of California, 189 Cal.App.4th 1117, 1136 (2010).  If a plaintiff fails to

11  establish a violation of some other law, the allegation of a § 17200 claim will also fail.  Pantoja v.

12  Countrywide Home Loans, Inc., 640 F.Supp.2d 1177, 1190 (N.D. Cal. 2009) ("[S]ince the court

13  has dismissed all of Plaintiff's predicate violations, Plaintiff cannot state a claim under the

14  unlawful business practices prong of the UCL.").

15         Here, the court finds that plaintiff's amended complaint fails to state any other

16  valid claim.  Accordingly, plaintiff's claim for violation of California Business & Professions

17  Code § 17200 also fails and defendants' motions to dismiss will be granted as to this claim.

18                                      LEAVE TO AMEND

19         For the reasons explained above, defendants' motions to dismiss will be granted

20  and plaintiff's amended complaint dismissed for failure to state a claim upon which relief may be

21  granted.  The court has carefully considered whether plaintiff may further amend her complaint to

22  state a claim upon which relief can be granted.  "Valid reasons for denying leave to amend

23  include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v.

24  Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake Pharm. Ass'n

25  v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to

26  amend shall be freely given, the court does not have to allow futile amendments).  However,

27  when evaluating the failure to state a claim, the complaint of a pro se plaintiff may be dismissed

28  "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his

                                              12

claim which would entitle him to relief.'" Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972). See also Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

Here, with respect to the amended complaint's causes of action that are barred by res judicata, it appears beyond doubt that plaintiff cannot further amend her complaint to state a claim upon which relief may be granted. The court also finds it clear that plaintiff cannot successfully amend her IIED allegations to state a cognizable claim.

However, with respect to plaintiff's claims of fraud, violation of §17200 and possibly plaintiff's quiet title claim, the court cannot say at this time that it appears beyond doubt that plaintiff can allege and prove no set of facts in support of her claims which would entitle her to relief. Moreover, construing the allegation found in plaintiff's amended complaint in the light most favorable to her, plaintiff may be able to further amend her complaint to allege additional claims. In this regard, it may be possible for plaintiff to successfully amend her complaint to allege a valid claim of promissory estoppel.[8] Similarly, it may be possible for plaintiff to

---

[8] "The elements of promissory estoppel are: (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages measured by the extent of the obligation assumed and not performed." Quinteros v. Aurora Loan Servs., 740 F.Supp.2d 1163, 1171 (E.D. Cal. 2010) (citing Poway Royal Mobilehome Owners Ass'n v. City of Poway, 149 Cal.App.4th 1460, 1471 (2007)). Courts, presented with similar factual allegations as those at issue in this action, have found valid promissory estoppel claims. See Harris v. Wells Fargo Bank, N.A., No. 12-cv-5629 JST, 2013 WL 1820003, at *10-11 (N.D. Cal. Apr. 30, 2013) ("Plaintiff here alleges that Wells Fargo, through its representatives, repeatedly promised her that her failure to make monthly payments would not result in default, late fees, or negative credit consequences during the pendency of her loan modification application. Relying on that promise, in a reasonable manner entirely foreseeable by Wells Fargo, Plaintiff refrained from making her monthly payments. Wells Fargo then charged Plaintiff late fees, recorded a notice of default, and reported her failure to pay to credit agencies. Plaintiff alleges that she was injured because absent the promise she would have paid her monthly mortgage payments, and that her reliance on the promise resulted in negative credit consequences, late fees, and foreclosure proceedings. Nothing more is required to adequately plead a promissory estoppel claim."); Helmer v. Bank of America, N.A., No. CIV S-12-0733 KJM GGH, 2013 WL 1192634, at *4 (E.D. Cal. Mar. 22, 2013) ("Here, plaintiff's cause of action for promissory estoppel alleges that defendant promised it would not foreclose on the house during the loan modification and refinancing process, that plaintiff reasonably relied on this promise, inducing plaintiff to not make his mortgage payments, and that plaintiff suffered

13

1   successfully amend her complaint to allege a valid negligence claim.[9]

2           Accordingly, the court cannot say that it is now beyond doubt that the granting of

3   further leave to amend would be futile.  Plaintiff's amended complaint will therefore be dismissed

4   with leave granted to file a second amended complaint.  Plaintiff is cautioned, however, that if she

5   elects to file an amended complaint "the tenet that a court must accept as true all of the

6   allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

7   the elements of a cause of action, supported by mere conclusory statements, do not suffice."

8

9   _____

detriment when his house was sold at foreclosure sale."); Harvey v. Bank of Am., N.A., 906
F.Supp.2d 982, 993-94 (N.D. Cal. 2012) (plaintiff sufficiently stated promissory estoppel claim
by alleging that the bank encouraged plaintiff to stop making mortgage payments so that he could
qualify for a loan modification, but then contrary to promise, denied modification application and
instituted foreclosure proceedings); Solomon v. Aurora Loan Services LLC, No. CIV. 2:12-cv-
209 WBS KJN, 2012 WL 2577559, at *6 (E.D. Cal. July 3, 2012) ("Here, defendant allegedly
promised that they would not foreclose on plaintiff's property while her HAMP application was
pending.  Plaintiff allegedly could have paid back the arrearage to reinstate her loan, but followed
defendant's advice to delay payment until after the results of her most recent HAMP application
were in.  This step was taken in reasonable reliance on defendant's promise, and was foreseeable
as it was precisely what defendant's agent advised her to do.  Plaintiff suffered injury as a result
of her reliance because her home was foreclosed on before her HAMP application was resolved.
She has therefore sufficiently alleged the elements of a promissory estoppel claim."); Sutherland
v. Barclays American/Mortgage Corp., 53 Cal.App.4th 299, 312 (1997) (mortgagor relied to her
detriment on mortgagee's statement that she could postpone three payments without incurring
foreclosure).

[9]  The elements of negligence are "duty, breach of duty, causation, and damages."  Marlene F. v.
Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.3d 583, 588 (1989).  Although as a general rule
financial institutions owe no duty of care to a borrower, presented with allegations similar to
those at issue in this action, courts have found that plaintiffs have stated cognizable negligence
claims.  See McGarvey v. JP Morgan Chase Bank, N.A., No. 2:13-cv-1099 KJM EFB, 2013 WL
5597148, at *7 (E.D. Cal. Oct. 11, 2013) ("Defendant owes plaintiff and those in similar
circumstances a duty to exercise ordinary care in the loan modification process."); Ansanelli v. JP
Morgan Chase Bank, N.A., No. C 10-3892 WHA, 2011 WL 1134451, at *7-8 (N.D. Cal. Mar. 28,
2011) ("Yet the complaint alleges that defendant went beyond its role as a silent lender and loan
servicer to offer an opportunity to plaintiffs for loan modification and to engage with them
concerning the trial period plan.  Contrary to defendant, this is precisely 'beyond the domain of a
usual money lender.'  Plaintiffs' allegations constitute sufficient active participation to create a
duty of care to plaintiffs to support a claim for negligence."); Garcia v. Ocwen Loan Servicing,
LLC, No. C 10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010) ("Here, by asking
Plaintiff to submit supporting documentation, Defendant undertook the activity of processing
Plaintiff's loan modification request.  Having undertaken that task, it owed Plaintiff a duty to
exercise ordinary care in carrying out the task.").

14

1   Iqbal, 556 U.S. at 678.  "While legal conclusions can provide the complaint's framework, they

2   must be supported by factual allegations."  Id. at 679.  Those facts must be sufficient to push the

3   claims "across the line from conceivable to plausible[.]"  Id. at 680 (quoting Twombly, 550 U.S.

4   at 557).

5          In this regard, although the Federal Rules of Civil Procedure adopt a flexible

6   pleading policy, a complaint must give the defendant fair notice of the plaintiff's claims and must

7   allege facts that state the elements of each claim plainly and succinctly.  FED. R. CIV. P. 8(a)(2);

8   Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers

9   'labels and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'

10  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

11  enhancements.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).  A plaintiff

12  must allege with at least some degree of particularity overt acts which the defendants engaged in

13  that support the plaintiff's claims.  Jones, 733 F.2d at 649.

14          Plaintiff is also reminded that the court cannot refer to a prior pleading in order to

15  make an amended complaint complete.  Local Rule 220 requires that any amended complaint be

16  complete in itself without reference to prior pleadings.  The second amended complaint will

17  supersede the first amended complaint which superseded the original complaint.  See Loux v.

18  Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, in any second amended complaint plaintiff may

19  elect to file, just as if it were the initial complaint filed in the case, each defendant must be listed

20  in the caption and identified in the body of the complaint, and each claim and the involvement of

21  each defendant must be sufficiently alleged.  Any second amended complaint filed by plaintiff

22  must include concise but complete factual allegations describing the conduct and events which

23  underlie her claims.

                                    CONCLUSION

25          Accordingly, IT IS HEREBY ORDERED that:

26          1. Defendants Federal Home Loan Mortgage Corporation and JP Morgan Chase

27  Bank's March 26, 2013 motion to dismiss (Doc. No. 21) is granted;

28  /////

1          2.  Defendant Quality Loan Service Corporation's April 11, 2013 motion to

2    dismiss (Doc. No. 23) is granted;

3          3.  Plaintiff's March 12, 2013 amended complaint (Doc. No. 20) is dismissed;

4          4.  Plaintiff is granted thirty days from the date of service of this order to file an

5    amended complaint that complies with the requirements of the Federal Rules of Civil Procedure,

6    and the Local Rules of Practice; any amended complaint plaintiff elects to file must bear the

7    docket number assigned to this case and must be labeled "Second Amended Complaint;" failure

8    to file an amended complaint in accordance with this order will result in a recommendation that

9    this action be dismissed; and

10         5.  If any defendant named in plaintiff's original complaint, or in plaintiff's

11   amended complaint, is named as a defendant in the second amended complaint plaintiff may elect

12   to file, that defendant shall respond to the pleading within thirty days after it is filed and served.

13   Dated:  November 12, 2013

14

15   DALE A. DROZD
16   UNITED STATES MAGISTRATE JUDGE

17

18   DAD:6
     Ddad1\orders.pro se\riedel2819.mtd.ord.docx
19

20

21

22

23

24

25

26

27

28