1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SOFIA CAMPOS-RIEDEL,                          No.  2:12-cv-2819 TLN DAD PS

12                      Plaintiff,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14   JP MORGAN CHASE, et al.,

15                      Defendants.

16

17          This matter came before the court on July 11, 2014, for hearing of defendants' motions to

18   dismiss.  Plaintiff Sofia Campos-Riedel appeared on her own behalf.  Attorneys Ian Ross and

19   Julie Corriveau, appeared telephonically on behalf of the defendants.  For the reasons set forth

20   below, the undersigned will recommend that defendants' motions to dismiss be granted.

21                                         BACKGROUND

22          Plaintiff commenced this action on October 16, 2012, by filing a complaint in the Placer

23   County Superior Court.  (Dkt. No. 1 at 5.)  Defendants removed the matter to this court on

24   November 11, 2012, pursuant to 12 U.S.C. § 1452(f).[1]  On December 3, 2012, defendants Federal

25   Home Loan Mortgage Corporation ("Freddie Mac"), and JP Morgan Chase, ("Chase"), filed a

26

27   [1]  Title 12 U.S.C. § 1452(f) provides that "all civil actions to which [Freddie Mac] is a party shall
     be deemed to arise under the laws of the United States, and the district courts of the United States
28   shall have original jurisdiction of all such actions, without regard to amount or value."

                                                   1

1  motion to dismiss, (Dkt. No. 8) and on February 25, 2013, the undersigned granted defendants'

2  motion to dismiss and granted plaintiff leave to file an amended complaint.  (Dkt. No. 19.)

3       On March 12, 2013, plaintiff filed her first amended complaint.  (Dkt. No. 20.)

4  Defendants filed motions to dismiss on March 26, 2013, (Dkt. No. 21), and April 11, 2013.  (Dkt.

5  No. 23.)  On November 13, 2013, the undersigned granted defendants' motions to dismiss and

6  granted plaintiff further leave to file a second amended complaint.  (Dkt. No. 36.)

7       Plaintiff filed her second amended complaint on December 12, 2013.  (Dkt. No. 37.)

8  Defendants filed a motion to dismiss on January 13, 2014.  (Dkt. No. 38.)  On March 3, 2014, the

9  undersigned granted defendants' motion to dismiss and again granted plaintiff further leave to

10  amend.  (Dkt. No. 43.)

11       On March 24, 2014, plaintiff filed a third amended complaint.  (Dkt. No. 44.)  Therein,

12  plaintiff alleges, in relevant part, as follows.  On December 14, 1993, Donald Riedel purchased

13  the residential property at issue in this action ("subject property") through a mortgage company

14  with a loan provided by defendant Freddie Mac.  (Third Am. Compl. (Dkt. No. 44) at 4.[2])

15  Plaintiff married Donald Riedel on September 17, 1994.  (Id.)  On August 25, 1996, Donald

16  Riedel deeded the subject property to himself and plaintiff as "Husband and Wife as Joint

17  Tenants" and recorded that document with the Placer County Recorder's Office.  (Id.)

18       On October 17, 1997, Donald Riedel filed for marital dissolution and on October 17,

19  2000, plaintiff "bought out Donald Riedel's interest in the subject property by way of

20  "Interspousal Transfer Grant Deed" as part of the couple's "Marriage Settlement Agreement."

21  (Id. at 4-5.)  This document was also recorded with the Placer County Recorder's Office.  (Id.)

22  According to the Interspousal Transfer Grant Deed, plaintiff was the sole owner of the subject

23  property.  (Id.)  Thereafter, plaintiff contacted the mortgage lender, advised that she was now the

24  sole owner of the property and provided all documents necessary to transfer the mortgage on the

25  subject property into her name.  (Id. at 5.)  All subsequent correspondence, including loan

26  statements, from the mortgage company regarding the subject property was addressed to plaintiff.

27

28  [2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF
system and not to page numbers assigned by the parties.

1    (Id.)  Thereafter, plaintiff paid all monthly mortgage payments, property taxes and insurance on

2    the subject property.  (Id.)

3           In July of 2008, plaintiff "stopped making her monthly mortgage payments for the sole

4    purpose of qualifying for a loan modification . . . ."  (Id. at 6.)  In September 2008, plaintiff

5    received from the mortgage company an application for a loan modification, which plaintiff

6    completed and returned.  (Id.)  That same month, the mortgage company was purchased by

7    defendant Chase.  (Id.)  On December 11, 2008, a Notice of Default and Election to Sell was

8    recorded with the Placer County Recorder's Office.  (Id.)  The notice, however, was provided to

9    plaintiff's ex-husband Donald Riedel, not to plaintiff.  (Id.)  On January 28, 2009, defendant

10   Quality substituted in as the trustee.  (Id.)

11          On March 13, 2009, six months after plaintiff submitted her application for a loan

12   modification, she received a second application for a loan modification, this time from defendant

13   Chase.  (Id.)  Plaintiff was informed by Chase that her first application had been submitted on the

14   wrong form even though it was submitted on the form provided to her by the mortgage company.

15   (Id.)  Around this same time a Notice of Trustee's Sale was recorded with the Placer County

16   Recorder's Office.  (Id. at 7.)  On March 30, 2009, Vicki Thorne, a Chase employee, confirmed

17   receipt of plaintiff's loan modification supplement and informed plaintiff that the trustee sale of

18   the subject property would be postponed.  (Id.)

19          On July 31, 2009, plaintiff "entered into a 'Trial Plan Agreement' with defendant Chase."

20   (Id.)  Plaintiff "was assured by Vicki Thorne that . . . during the trial loan modification, any

21   pending trustee sale would be put on hold."  (Id.)  However, on December 19, 2009, plaintiff

22   received a "Notice of Incomplete Request," dated October 30, 2009, and postmarked December

23   18, 2009, requesting additional documents from plaintiff within ten days of October 30, 2009.

24   (Id. at 8.)

25          On December 31, 2009, plaintiff "resubmitted a new loan modification which was faxed

26   by Brian Kulpa, a Chase branch loan manager . . . ."  (Id.)  That same day, plaintiff "spoke with

27   Chellenne, who informed plaintiff [she] needed to start the process over with updated

28   information" because previously submitted documents were now outdated.  (Id.)

In September of 2010, plaintiff contacted the Home Affordable Modification Program ("HAMP").  (Id.)  Plaintiff was informed that a HAMP representative would need to speak with Chase in order to confirm certain information.  (Id.)  However, on a three-way call with the HAMP representative, plaintiff and a representative from Chase, the HAMP representative stated that the call would need to be recorded.  (Id. at 9.)  The Chase representative objected to the recording of the telephone call and hung up.  (Id.)

On April 5, 2010, a Notice of Trustee's Sale was recorded and on January 21, 2011, another Notice of Trustee's Sale was recorded.  (Id.)  On January 19, 2012, plaintiff's home was sold to Freddie Mac at a Trustee's Sale.  (Id.)  Plaintiff was not aware of the pending Trustee Sale.  On January 20, 2012 defendant Quality Loan Service Corporation ("Quality") "conveyed its interest to defendant Freddie Mac."  (Id.)  On January 30, 2012, defendant Chase "transferred its beneficial interest to defendant Freddie Mac."  (Id.)

Based on these allegations, plaintiff's third amended complaint purports to state claims of promissory estoppel, negligence, fraud and quiet title.  Defendant Quality filed a motion to dismiss the third amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on April 22, 2014.  (Dkt. No. 45).  On April 23, 2014, defendant Chase also filed a motion to dismiss pursuant to Rule 12(b)(6).  (Dkt. No. 49.)  Plaintiff did not file an opposition or statement of non-opposition to either motion to dismiss.

On July 11, 2014, the matter came before the undersigned for hearing of defendants' motions to dismiss.  At that hearing, plaintiff claimed that she had not received copies of defendants' motions and requested time to file an opposition.  Plaintiff was granted three weeks to file written opposition to defendants' motions.  (Dkt. No. 61.)  However, despite being granted additional time to do so, plaintiff failed to file any written opposition to the pending motions to dismiss.  Below, the undersigned will address the legal standards applicable to the pending motions and address each of claims set forth in plaintiff's third amended complaint.

/////

/////

/////

4

1  STANDARDS

2  I.  <u>Legal Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)</u>

3       The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

4  sufficiency of the complaint.  <u>N. Star Int'l v. Ariz. Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir.

5  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

6  sufficient facts alleged under a cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901

7  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

8  relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A

9  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

10  the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v.</u>

11  <u>Iqbal</u>, 556 U.S. 662, 678 (2009).

12       In determining whether a complaint states a claim on which relief may be granted, the

13  court accepts as true the allegations in the complaint and construes the allegations in the light

14  most favorable to the plaintiff.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Love v.</u>

15  <u>United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

16  stringent standards than formal pleadings drafted by lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519,

17  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

18  form of factual allegations.  <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th

19  Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

20  an unadorned, the defendant-unlawfully-harmed-me accusation."  <u>Iqbal</u>, 556 U.S. at 678.  A

21  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

22  elements of a cause of action."  <u>Twombly</u>, 550 U.S. at 555.  <u>See also</u> <u>Iqbal</u>, 556 U.S. at 676

23  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

24  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

25  facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

26  not been alleged."  <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>,

27  459 U.S. 519, 526 (1983).

28  /////

1    In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court is permitted

2    to consider material which is properly submitted as part of the complaint, documents that are not

3    physically attached to the complaint if their authenticity is not contested and the plaintiff's

4    complaint necessarily relies on them, and matters of public record.  Lee v. City of Los Angeles,

5    250 F.3d 668, 688-89 (9th Cir. 2001).

6                                               ANALYSIS

7    I.      Promissory Estoppel

8            "'The elements of promissory estoppel are:  (1) a clear promise, (2) reliance, (3)

9    substantial detriment, and (4) damages measured by the extent of the obligation assumed and not

10   performed.'"  Quinteros v. Aurora Loan Servs., 740 F.Supp.2d 1163, 1171 (E.D. Cal. 2010)

11   (quoting Poway Royal Mobilehome Owners Ass'n v. City of Poway, 149 Cal.App.4th 1460, 1471

12   (2007)).

13           In support of plaintiff's claim for promissory estoppel the third amended complaint

14   alleges as follows.  In July 2008, plaintiff was informed that, "to qualify for a permanent loan

15   modification, Plaintiff would have to be behind on her monthly mortgage payments" but that she

16   "would not be foreclosed on if she was behind because she was applying for a loan modification."

17   (Third Am. Compl. (Dkt. No. 44) at 12.)  In August 2008, plaintiff "discontinued making her

18   monthly mortgage payments for the purpose of qualifying for a loan modification."  (Id.)

19   Plaintiff would not have stopped making her mortgage payment "if not to qualify for a Permanent

20   Loan Modification."  (Id.)  Plaintiff was given a loan modification and, on July 31, 2009, entered

21   into a "Trial Plan Agreement."  (Id. at 13.)

22           In her third amended complaint plaintiff also alleges that after she entered into the Trial

23   Plan Agreement, she was promised "that during the trial loan modification, any pending trustee

24   sale would be put on hold," and that despite that promise, on January 19, 2012, "while Plaintiff

25   was in a Trial Loan Modification," her home was sold at a Trustee Sale.  (Id.)  In support of these

26   allegations, plaintiff has attached as an exhibit to her third amended complaint the signature page

27   of a "Home Affordable Modification Trial Period Plan," signed by plaintiff and dated July 30,

28   2009.  (Id. at 21.)

                                                    6

1    In their motions to dismiss defendants have provided the court with a complete copy of

2    that document.[3]  Review of the entire document finds that the Home Affordable Modification

3    "Trial Period Plan" ended on "the earlier of" October 1, 2009 or "termination of this plan . . . ."

4    (Def.'s MTD (Dkt. No. 51) at 21.)  Thus, the trial loan modification ended no later than October

5    1, 2009.  According to the third amended complaint, plaintiff's home was not sold until January

6    19, 2012, over two years after her trial loan modification had ended.

7    In this regard, the third amended complaint fails to allege facts that if proven would

8    establish that plaintiff relied on any promise made by a defendant to her detriment.  Accordingly,

9    the undersigned finds that the third amended complaint fails to state a cognizable claim based

10    upon promissory estoppel principles.

11    II.    Negligence

12    The elements of negligence are "duty, breach of duty, causation, and damages."  Marlene

13    F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.3d 583, 588 (1989).  See also McGarvey v.

14    JP Morgan Chase Bank, N.A., No. 2:13-cv-1099 KJM EFB, 2013 WL 5597148, at *7 (E.D. Cal.

15    Oct. 11, 2013) ("Defendant owes plaintiff and those in similar circumstances a duty to exercise

16    ordinary care in the loan modification process."); Garcia v. Ocwen Loan Servicing, LLC, No. C

17    10-0290 PVT, 2010 WL 1881098, at *4 (N.D. Cal. May 10, 2010) ("Here, by asking Plaintiff to

18    submit supporting documentation, Defendant undertook the activity of processing Plaintiff's loan

19    modification request.  Having undertaken that task, it owed Plaintiff a duty to exercise ordinary

20    care in carrying out the task.").

21    In support of plaintiff's negligence claim, the third amended complaint alleges that the

22    defendants were negligent as evidenced by the fact that they "sold plaintiff's home in foreclosure

23    _____

24    [3]  "Documents whose contents are alleged in a complaint and whose authenticity no party
questions, but which are not physically attached to the pleading, may be considered in ruling on a
Rule 12(b)(6) motion to dismiss."  In re Stac Electronics Securities Litigation, 89 F.3d 1399, 1405

25    (9th Cir. 1996) (quotations and alterations omitted).  See also Marder v. Lopez, 450 F.3d 445, 448
(9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if:

26    (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and
(3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").  Here,

27    plaintiff does not question the authenticity of the complete Home Affordable Modification Trial
Period Plan submitted with their motions to dismiss.

28

1   while plaintiff was in a Trial Loan Modification, notwithstanding promises that any foreclosure

2   proceeding would be put on hold while plaintiff was in a Trial Loan Modification." (Third Am.

3   Compl. (Dkt. No. 44) at 14.)  As noted above, however, it is apparent that by its very terms

4   plaintiff's trial loan modification had ended over two years prior to the time plaintiff's home was

5   sold.  Plaintiff also alleges that the defendants were negligent in failing to inform her of the

6   pending sale of her home.  Specifically, plaintiff alleges that she "was not informed [that the]

7   trustee sale would occur, foreclosing any opportunity Plaintiff would have had to protect her

8   home if not for her ignorance."  (Id.)

9         However, a "financial institution owes no duty of care to a borrower when the institution's

10  involvement in the loan transaction does not exceed the scope of its conventional role as a mere

11  lender of money."  Nymark v. Heart Fed. Savings & Loan Assn.,  231 Cal.App.3d 1089, 1096

12  (1991).  Here, even if defendant Chase failed to provide plaintiff with notice of the trustee's sale,

13  Chase's involvement in the foreclosure process would not exceed the scope of its conventional

14  role as a mere lender of money.  In fact, that "action[]–or inaction[] . . . fall[s] squarely within the

15  class of conduct a lender might take during the default process."  Roque v. Wells Fargo Bank

16  N.A., No. 2:14-cv-0040-ODW(SSx), 2014 WL 904191, at *7 (C.D. Cal. Feb. 3, 2014).

17        The undersigned previously addressed this claim in the November 12, 2013 order

18  dismissing plaintiff's first amended complaint with leave to amend.  In that order the court found

19  that plaintiff's negligence claim was barred by res judicata.  (Dkt. No. 36 at 8.)  In reaching that

20  conclusion, the undersigned took judicial notice of a May 14, 2012 order issued by the Placer

21  County Superior Court[4] in an unlawful detainer action between these same parties in which the

22  /////

23

24  _____

    [4]  A court may take judicial notice of its own files and documents filed in other courts.  Reyn's
25  Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006); Burbank-Glendale-
    Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998); Hott v. City of
26  San Jose, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000); see also FED. R. EVID. 201; Lee v. City of Los
    Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (on a motion to dismiss, court may consider
27  matters of public record); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986) (on
    a motion to dismiss, the court may take judicial notice of matters of public record outside the
28  pleadings).

1   state court found that the foreclosure trustee in this matter fully complied with California Civil

2   Code § 2924, et seq., and entering judgment in favor of defendant Freddie Mac.  (Id. at 8.)

3       "[A] judgment in unlawful detainer usually has very limited res judicata effect and will

4   not prevent one who is dispossessed from bringing a subsequent action to resolve questions of

5   title."  Vella v. Hudgins, 20 Cal.3d 251, 255 (Cal. 1977).  There is a limited exception to this rule

6   for subsequent fraud or quiet title suits founded upon allegations of irregularity in a trustee's sale,

7   since those suits are barred as a result of a prior unlawful detainer judgment.  Malkoskie v. Option

8   One Mortg. Corp., 188 Cal.App.4th 968, 974 (2010).

9       Here, plaintiff's claim that she did not receive notice of the trustee's sale is an allegation

10  of irregularity in the trustee's sale.  As such, it is barred under the doctrine of res judicata as a

11  result of the prior unlawful detainer judgment.  See Hopkins v. Wells Fargo Bank, N.A., No. CIV.

12  2:13-0444 WBS JFM, 2013 WL 2253837, at *5 (E.D. Cal. May 22, 2013) ("As in Malkoskie,

13  plaintiff's challenges to the validity of the foreclosure sale could have been raised as a defense in

14  the unlawful detainer action.  The judgment entered in that action therefore bars all claims by

15  plaintiff in the current case that challenge the propriety of the eviction and foreclosure."); Castle

16  v. Mortgage Electronic Registration Systems, Inc., No. EDCV 11-0583 VAP (DTBx), 2011 WL

17  3626560, at *7 (C.D. Cal. Aug. 16, 2011) ("The validity of the foreclosure process, trustee's sale,

18  and Fannie Mae's acquisition of the Property were all encompassed by the Unlawful Detainer

19  Action.").

20      Accordingly, the undersigned finds that plaintiff's third amended complaint also fails to

21  state a cognizable negligence claim.

22  III.   Fraud

23      In the third amended complaint's fraud claim plaintiff alleges that in "July of 2009, Chase

24  and plaintiff entered into a Trial Loan Modification."  (Third Am. Compl. (Dkt. No. 44) at 15)

25  (citing to the signature page of Home Affordable Modification Trial Period Plan).  Plaintiff also

26  alleges that she had been informed by Vicki Thorton, "an authorized representative of Chase . . .

27  that any pending foreclosure proceedings would be put on hold during the Trial Loan

28  Modification . . . ."  (Id.)  Plaintiff claims that she "relied on the misrepresentations that no

9

1    foreclosure proceedings would proceed while her account was in a trial loan modification . . . . ."

2    (Id.)

3        However, as noted above, plaintiff's home was not foreclosed upon during the trial loan

4    modification period.  In fact, plaintiff's home was not foreclosed upon until over two years after

5    the trial loan modification had expired by its very terms.

6        Accordingly, the undersigned finds that the third amended complaint fails to state a

7    cognizable fraud claim.

8    IV.    Quiet Title

9        The third amended complaint "seeks to quiet title against the following claims of the

10   defendants that plaintiff breached her obligations under the terms of the Deed of Trust."  (Third

11   Am. Compl. (Dkt. No. 44) at 17.)  However, the undersigned previously found that, "to the extent

12   plaintiff's claim for quiet title before this court is based on allegations of irregularity in the

13   trustee's sale, that claim would also barred as a result of the prior unlawful detainer judgment."

14   (Nov. 12, 2013 Order (Dkt. No. 36) at 8-9.)

15       In addition, the third amended complaint fails to allege tender.  "[A] purported quiet title

16   claim is doomed in the absence of a tender of amounts owed."  Allen v. U.S. Bank, Nat. Ass'n,

17   No. CV F 13-1527 LJO SMS, 2013 WL 5587389, at *5 (E.D. Cal. Oct. 10, 2013).  See also

18   Deerinck v. Heritage Plaza Mortg. Inc., No. 2:11-cv-1735 MCE EFB, 2012 WL 1085520, at *9

19   (E.D. Cal. Mar. 30, 2012) ("[T]o maintain a quiet title claim, a plaintiff is required to allege

20   tender of the proceeds of the loan at the pleading stage."); Briosos v. Wells Fargo Bank, 737

21   F.Supp.2d 1018, 1032 (N.D. Cal. 2010) ("In California it is well-settled that a mortgagor cannot

22   quiet his title against the mortgagee without paying the debt secured."); Kelley v. Mortgage

23   Electronic Registration Systems, Inc., 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009) ("Plaintiffs

24   have not alleged that they . . . have satisfied their obligations under the Deed of Trust.  As such,

25   they have not stated a claim to quiet title.").

26       Accordingly, the undersigned also finds that plaintiff's third amended complaint fails to

27   state a cognizable quiet title claim.

28   /////

                                         10

1    FURTHER LEAVE TO AMEND

2    For the reasons explained above, defendants' motions to dismiss should be granted and

3    plaintiff's third amended complaint dismissed for failure to state a claim upon which relief may

4    be granted.[5]  The court has carefully considered whether plaintiff may further amend her

5    complaint to state a claim upon which relief can be granted.  "Valid reasons for denying leave to

6    amend include undue delay, bad faith, prejudice, and futility."  California Architectural Bldg.

7    Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake

8    Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that

9    while leave to amend shall be freely given, the court does not have to allow futile amendments).

10   Here, in light of the allegations of her third amended complaint, the legal principles set

11   forth above and plaintiff's inability to successfully state a cognizable claim for relief despite three

12   times being granted leave to amend to attempt to do so, the undersigned finds that granting further

13   leave to amend would be futile in this case.  See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083,

14   1088 (9th Cir. 2002) (there is no need to prolong the litigation by permitting further amendment

15   where the "basic flaw" in the underlying facts as alleged cannot be cured by amendment); Lipton

16   v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be

17   futile, there was no need to prolong the litigation by permitting further amendment.").

18   Accordingly, IT IS HEREBY RECOMMENDED that:

19   1.  Defendant Quality Home Loan Services' April 22, 2014 motion to dismiss

20   (Dkt. No. 45) be granted;

21

22   [5]  In addition to failing to state a cognizable claim for relief, plaintiff's third amended complaint
fails to alleges any facts that would suggest that defendant Quality exceeded its role as a trustee.

23   See Flores v. EMC Mortg. Co., 997 F.Supp.2d 1088, 1127 (E.D. Cal. 2014) ("There is nothing to
suggest that NDS exceeded its DOT trustee authority to initiate property foreclosure.  As such,

24   NDS is immunized from the complaint's claims, which further fail for the reasons addressed
above."); Patel v. Mortgage Electronic Registration Systems, Inc., Case No.: 3:13-cv-1874-KAW,

25   2013 WL 6512848, at *4 (N.D. Cal. 2013) ("California Civil Code section 2924(b) also insulates
a foreclosure trustee from 'liability for any good faith error resulting from reliance on information

26   provided in good faith by the beneficiary regarding the nature and amount of the default'"); Mora
v. U.S. Bank N.A., No. 11-6598 SC, 2012 WL 2061629, at *7 (N.D. Cal. June 7, 2012)

27   ("Plaintiffs have pled no facts that could subject NDSC to liability, given that California law
shields foreclosure trustees from liability for certain good faith errors.").

28

1                  2.  Defendant JP Morgan Chase's April 23, 2014 motion to dismiss (Dkt. No. 49)

2    be granted;

3                  3.  Plaintiff's March 24, 2014 third amended complaint (Dkt. No. 45) be dismissed

4    without leave to amend; and

5                  4.  This action be closed.

6          These findings and recommendations will be submitted to the United States District Judge

7    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

8    days after being served with these findings and recommendations, plaintiff may file written

9    objections with the court.  A document containing objections should be titled "Objections to

10   Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

11   objections within the specified time may, under certain circumstances, waive the right to appeal

12   the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   Dated:  December 2, 2014

14

15   _____

16   DAD:6                                   DALE A. DROZD
     Ddad1\orders.pro se\riedel2819.mtd3.f&rs.docx   UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28